UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.   **MEMORANDUM OF LAW & ORDER**
    Criminal File No. 09-298 (MJD/FLN)

(15) TIMOTHY WILLIAMS and
(16) JESSIE DANIELLE CAPERS,

       Defendants.

_____

Steven L. Schleicher and Jeffrey M. Bryan, United States Attorney's Office, Counsel for Plaintiff.

Thomas G. Dunnwald, Dunnwald & Peterson PA, Counsel for Defendant Timothy Williams.

William G. Selman, III, Selman Law Office, Counsel for Defendant Jessie Danielle Capers.

_____

**I.   INTRODUCTION**

The above-entitled matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Franklin L. Noel dated February 1, 2010.  [Docket Nos. 504 and 505]

1

Defendant Jessie Danielle Capers objects to Magistrate Judge Noel's recommendation to deny her Motion to Suppress Evidence from Search and Seizure [Docket No. 353] and to deny, in part, her Motion to Suppress Statements, Admissions and Answers [Docket No. 352].

Defendant Timothy Williams objects to Magistrate Judge Noel's recommendation to deny Williams' Motion for Suppression of Search and Seizure Evidence [Docket No. 285] and to deny Williams' Motion for Translation or Suppression of Communications [Docket No. 406]. Williams has withdrawn his request for an evidentiary hearing. The Court conducted a status conference on this case on February 10, 2010, and there were no outstanding issues preventing the Court from ruling on the parties' objections to the Report and Recommendation.

Pursuant to statute, the Court has conducted a <u>de novo</u> review of the record, including the transcript of the January 7, 2010, hearing and the exhibits submitted in conjunction with that hearing. 28 U.S.C. § 636(b)(1); Local Rule 72.2(b).

II.   **FACTUAL BACKGROUND**

The Court adopts the Findings of Fact in the Report and Recommendation

with the following modifications:

On page 6, the first sentence in the first paragraph is modified to read: "At the time of the stop, Officer Greene directed Trooper Schneider 'not to let [Defendants] go,' and testified that the trooper 'continued his search farther under my direction.'"

On page 6, the first paragraph in section B(1)(a), the second to the last sentence is modified to read: "Trooper Schneider testified: 'I was to tell them a legitimate reason for the stop,' and 'if a reason could not have been found, yes, essentially, the vehicle was going to be stopped.'"

On page 8, footnote 7, the quotation marks are deleted from around the term "pinpoints the area of the smell."

On page 10, the first line states that "the first time around, the dog hesitates only slightly, if at all, at the passenger door before continuing." This passage is modified to state that "the first time around, the dog hesitates at the passenger door before continuing."

On page 12, the first sentence in the first full paragraph is modified to read as follows:

During Defendant Capers' interview, Officer Freichels asks: "What

were you guys doing? Where were you coming from?" to which Defendant Capers responds: "I'm done answering questions, I'm sorry, goodbye." Officer Freichels responds, "You're done?" Capers responds, "Yes," and, without pause, continues to speak, uninterrupted, explaining her situation and saying that she "didn't do anything."

### III.  WILLIAMS' MOTION FOR TRANSLATION OR SUPPRESSION OF COMMUNICATIONS

Williams objects to the Magistrate Judge's recommendation that Williams' motion to suppress the wiretap evidence be denied. The Court adopts the Report and Recommendation's analysis of this issue. Williams provides no specific reason that suppression might be warranted. Additionally, his objections regarding obtaining translations from the Government are moot. The Government has already provided or been ordered to provide the relevant rough translations, the wiretaps, and the full translations of the wiretaps that the Government will use at trial.

### IV.  OCTOBER 16, 2009, VEHICLE STOP AND SEARCH

The Court adopts the Report and Recommendation's discussion of the October 16 use of the drug sniffing dog and subsequent vehicle search, found in section II(A) of the Report and Recommendation. The Court further addresses the objections raised by Defendants.

4

**A.      Schneider's Use of His Firearm During the Stop**

Williams objects that the Conclusions of Law portion of the Report and Recommendation did not address the fact that Schneider drew his firearm on Williams during the stop.  There is no indication that Schneider's act of drawing the gun on Williams is relevant to the pending motions.  His reasonable response to Williams' movement in the car appearing to place something under or retrieve something from under the seat, which is clearly visible on the video, had no effect on the legality of the stop, seizure, or search of Defendants and the car. Additionally, there is no dispute that Williams was in custody at that point.

**B.      Whether Bandit Alerted**

Capers asserts that, based on the video of the traffic stop, Bandit did not alert at the front passenger side door.  Based on the Court's own viewing of the video and its review of the testimony in this case, the Court concludes that Bandit did alert.

**C.      Legality of the Traffic Stop and the Length of the Seizure**

Capers argues that there was insufficient evidence to justify the traffic stop. She further argues that Schneider exceeded the scope of the investigatory traffic stop based on the driving violations when he employed Bandit to sniff the

vehicle. Williams also objects that the Report and Recommendation did not address the extended stop of the vehicle and seizure of Defendants before the dog was let out.

At a minimum, Schneider had probable cause to conduct the traffic stop because he witnessed Capers speeding and driving without headlights.

> When a traffic stop is lawful at its inception and otherwise executed in a reasonable manner, a dog sniff conducted during the stop does not infringe on a constitutionally protected privacy interest. A traffic stop can become unlawful, however, if it is prolonged beyond the time reasonably required to complete its purpose.

United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007) (citations omitted). Asking several questions about whether the defendant is carrying narcotics, although unrelated to the driving violations, does not unreasonably prolong the time of a traffic stop. Id. at 511. Therefore, Schneider's questions about drugs did not unreasonably prolong the traffic stop.

Additionally, Schneider's use of the drug dog a few minutes after issuing the warning was a de minimis extension of the traffic stop that did not violate the Fourth Amendment. See United States v. Suitt, 569 F.3d 867, 873 (8th Cir. 2009) (noting that the Eighth Circuit has "repeatedly upheld dog sniffs that were conducted within a few minutes after a traffic stop ended").

Although the traffic violations that Schneider witnessed were sufficient to sustain the stop and seizure until Bandit alerted and clearly established probable cause to search the vehicle, there is additional evidence to support the stop, seizure, and search. Although Schneider conducted the stop, ultimately, it was Greene who ordered Schneider to stop Capers' vehicle. Greene had a reasonable and articulable suspicion that the vehicle was carrying contraband based on the wiretap investigation; the telephone calls between Enrique Garcia and Jasmine Hall and between Garcia and Sergio Lozada; the surveillance of Lozada driving from the stash house to Garcia's apartment; the surveillance of Capers' vehicle appearing at Garcia's apartment after Hall indicated to Garcia that his "cousin" would be arriving to pick up the "nine;" the fact that Capers' vehicle had been recognized by law enforcement as the vehicle involved in the September transaction between Hall and Garcia; the fact that the occupants of the vehicle had appearances consistent with the occupants seen during the September 8 event and consistent with Garcia's indication that more than one person would pick up the "nine" and that they would be African-American; and surveillance of Williams' meeting with Garcia.

Greene's reasonable articulable suspicion can be imputed to Schneider

under the collective knowledge theory because Schneider acted at Greene's instruction and, as heard in the video and explained in the testimony, was in communication with Greene's team throughout the stop and search, relaying information and receiving direction.

> Where officers work together on an investigation, we have used the so-called "collective knowledge" theory, to impute the knowledge of one officer to other officers to uphold an otherwise invalid search or seizure. Under this rationale, the validity of a search may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if . . . some degree of communication exists between them. The requirement that there be a degree of communication serves to distinguish between officers functioning as a "search team," and officers acting as independent actors who merely happen to be investigating the same subject.

United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir. 2001) (citations omitted).

See also United States v. Banks, 514 F.3d 769, 776 (8th Cir. 2008).

In addition to the collective knowledge imputed from Greene, during the stop, Schneider observed Williams moving in the car as if he were retrieving or hiding something under the seat while Schneider questioned Capers, which lent additional reasonable articulable suspicion to extend the stop until the drug dog was brought to sniff the vehicle.

### D. Records Related to Bandit's Reliability

8

Williams next objects that although he has received Bandit's "Certificate of Certification," he did not receive the underlying test records for Bandit upon which the certification is based. Nor has he received records of Bandit's search history with the State Patrol. In the January 25 Order, the Magistrate Judge granted Williams' motion for discovery of these records. [Docket No. 496] The Government indicates that it has requested these records but not yet received them. The Government is ordered to provide the responsive documents at least one week before trial. If the documents reveal material information regarding Bandit's reliability, Williams may renew his motion for suppression on the basis of that new evidence.

V.   **STATEMENTS**

   A.   **Williams' Statements**

Neither Williams nor the Government object to the Report and Recommendation with regard to suppression of Williams' statements.

   B.   **Capers' Statements**

Capers objects to the Report and Recommendation's conclusion that her post-<u>Miranda</u> October 16, 2009 statements to Officer Freichels should not be suppressed. Specifically, she objects that, during the October 16 interrogation,

she unequivocally invoked her right to silence, but Freichels continued the questioning.

The Court has reviewed the audio tape of the October 16 interrogation and adopts the Magistrate Judge's conclusion. Officer Freichels clearly reads Capers' <u>Miranda</u> rights. She indicates that she understands each right and then answers his questions. Partway through the interrogation, at approximately 5:20 on the CD, Capers states, "I'm done answering questions, I'm sorry, goodbye." Officer Freichels responds, "You're done?" Capers responds, "Yes," but, without pause, quickly launches into a monologue explaining her situation and claiming "I didn't do anything." Her desire to remain silent was not clear, consistent, or unequivocal. <u>See</u> <u>United States v. Ferrer-Montoya</u>, 483 F.3d 565, 569 (8th Cir. 2007) ("A suspect invokes his right to remain silent by making a clear, consistent expression of a desire to remain silent. Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of <u>Miranda</u>.") (citations omitted).

**IT IS HEREBY ORDERED** that:

1. The Court **ADOPTS** the Report and Recommendation of United States Magistrate Franklin L. Noel dated February 1, 2010 [Docket Nos. 504 and 505] with the modifications set forth above.

2. Defendant Williams' Motion for Disclosure of Any Legal or Illegal Electronic Surveillance and Suppression [Docket No. 283] is **DENIED** to the extent Defendant Williams seeks to suppress surveillance.

3. Defendant Williams' Motion for Suppression of Search and Seizure Evidence [Docket No. 285] is **DENIED**.

4. Defendant Williams' Motion to Suppress Statements [Docket No. 286] is **GRANTED** to the extent Defendant Williams seeks to suppress any pre-<u>Miranda</u> statements made to law enforcement during the traffic stop on October 16, 2009 as well as any statements made after he invoked his right to counsel on October 21, 2009. In all other respects, the motion is **DENIED**.

5. Defendant Williams' Motion for Translation or Suppression of Communications [Docket No. 406] is **DENIED** to the extent Defendant Williams seeks to suppress communications.

6. Defendant Capers' Motion to Suppress Statements, Admissions and Answers [Docket No. 352] is **GRANTED** to the extent Defendant Capers seeks to suppress any pre-<u>Miranda</u> statements made to law enforcement during the traffic stop on October 16, 2009. In all other respects, the motion is **DENIED**.

7. Defendant Capers' Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 353] is **DENIED**.

8. The Government shall provide the canine records to Defendant Williams at least one week before the start of trial. If the records contain material evidence regarding Bandit's reliability, Williams

may renew his motion to suppress based on that new evidence.


Dated:   February 11, 2010                         s/ Michael J. Davis
                                                   Michael J. Davis
                                                   Chief Judge
                                                   United States District Court